**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **JACK IRVING,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **CASE No:** 07-107 |
| **DAVOL, INC., and C.R. BARD, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

# COMPLAINT

## Parties

1. Plaintiff, JACK IRVING ("Mr. IRVING") is a citizen and resident of the County of Onslow, State of North Carolina.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and

participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

**Jurisdiction**

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state from the Defendant.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are located in this District, manufactured and advertised the subject Kugel Composix Hernia Patches in this District, received substantial compensation and profits from sales of Kugel Composix Hernia Patches in this District, and made material omissions and misrepresentations and breached warranties in this District.

**Facts**

6. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Mr. IRVING's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Mr. IRVING's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

9. On April 20, 2000, Mr. IRVING had an incisional hernia repaired at the Pitt County Memorial Hospital. A Medium Sized Oval Patch was implanted into Mr. IRVING by Dr. Neuwirth at this time.

10. The Composix Kugel Patch hernia repair product implanted in Mr. IRVING was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

12. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

13. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break or fail under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

14. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

15. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

16. In early 2005, Mr. IRVING began suffering from severe abdominal pains, occasional fevers, and nausea.

17. By July 2005, Mr. IRVING was requiring surgical procedures to drain excess fluids and debride abscesses which had developed from the defective Kugel Patch.

18. Mr. IRVING's severe abdominal pain and complications continued to worsen such that the decision was made by the physicians at the University of North Carolina Hospital to perform an explant procedure and remove the Composix Kugel Patch.

19. On March 17, 2006, Mr. IRVING had surgery performed by Dr. Rich and Dr. Allen at University of North Carolina Hospital.

20. During the surgery, it was noted that the defective Kugel Patch had "folded upon itself such that it created a wad" and this lead to two separate areas of the bowel becoming densely adherent to the Kugel mesh material.

21. In addition, the defective Kugel mesh had caused the development of at least one "mesh associated enterocutaneous fistula" to develop in Mr. IRVING's small bowel and caused a recurrence of the hernia. Approximately 8 cm of bowel had to be resected in an attempt to correct the damage caused by the defective Kugel Patch.

22. Following the surgery on March 17, 2007, Mr. IRVING subsequently suffered from significant issues with subcutaneous infections which required debridement of an abdominal wall abscess in October 2006 and placement of a wound vac.

23. In January 2007, Mr. IRVING required yet another surgery to address the still recurring complications in his abdominal cavity which never completely resolved after the March 17, 2006 removal of the defective Composix Kugel Patch.

24. Mr. IRVING has suffered and will continue to suffer physical pain and mental anguish.

25. Mr. IRVING has incurred substantial medical bills and Mr. IRVING has lost wages.

26. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

27. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

28. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

29. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

30. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

31. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

## <u>COUNT I</u>
## Negligence

32. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

33. Defendants DAVOL and BARD were negligent to Mr. IRVING in the following respects:

34. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and

prepare for use the Composix Kugel Patch.

35. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

36. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

37. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. IRVING.

38. Defendants DAVOL and BARD owed a duty to Mr. IRVING to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

39. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel

Patch.

40. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Mr. IRVING's hernia repair surgery failed, resulting in Mr. IRVING suffering pain and harm.

41. As a direct and proximate result of DAVOL's and BARD's negligence, Mr. IRVING has suffered injuries and damages.

42. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II
## Violation of the North Carolina Deceptive Trade Practices Act

43. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

44. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with the Mr. IRVING in the following respects:

45. Defendants DAVOL and BARD are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel

Patch for hernia repair surgery.

46. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

47. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

48. While Defendants DAVOL and BARD knew or reasonably should have known that some Composix Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Kugel Patch for hernia repair surgery, specifically that the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

49. DAVOL and BARD did not inform the FDA prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

50. DAVOL and BARD did not inform the public at large prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

51. DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

52. DAVOL's and BARD's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

53. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III
## Strict Product Liability

54. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

55. Defendants DAVOL and BARD are strictly liable to Mr. IRVING in the following respects:

56. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

57. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Mr. IRVING's Composix Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal

Case 1:07-cv-01880-LJO-DLB Document 1-2 Filed 08/29/2007 Page 10 of 19

surgery of his Composix Kugel Patch.

58. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

59. The Composix Kugel Patch implanted into Mr. IRVING was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

60. The Composix Kugel Patches, like the one found in Mr. IRVING, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. IRVING as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Mr. IRVING;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. IRVING;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. IRVING, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch

as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

61. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV
## Negligent Infliction of Emotional Distress

62. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

63. Defendants DAVOL and BARD are liable to Mr. IRVING for the negligent infliction of emotional distress in the following respect:

64. Mr. IRVING suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

65. Mr. IRVING suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

66. Therefore, DAVOL and BARD are liable to Mr. IRVING.

67. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and

appropriate.

## COUNT V
## Intentional Infliction of Emotional Distress

68. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

69. Defendants DAVOL and BARD are y liable to Mr. IRVING for the intentional infliction of emotional distress in the following respect:

70. Mr. IRVING suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

71. Mr. IRVING suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. IRVING.

72. Therefore, DAVOL and BARD are liable to Mr. IRVING.

73. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a

sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI
**Breach of Implied Warranty**

74. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

75. Defendants DAVOL and BARD are liable to Mr. IRVING for their breach of implied warranty in the following respect:

76. DAVOL and BARD sold the Kugel Patch which was implanted in Mr. IRVING. DAVOL and BARD impliedly warranted to Mr. IRVING, his physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

77. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

78. Mr. IRVING, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

79. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used

as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

80. Mr. IRVING suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**Wherefore,** Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate

## COUNT VII
## Failure to Warn

81. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

82. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

83. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mr. IRVING received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

84. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily

obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

85. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. IRVING had his hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

86. Mr. IRVING did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

87. Mr. IRVING suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

88. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Mr. IRVING respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**COUNT VIII**
**Constructive Fraud**

89. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

90. Defendants, while in possession of unique and pertinent information involving the safety and mechanical reliability of its Kugel Composix Hernia Patches, presented its Kugel Composix Hernia Patches as mechanically sound and failed to warn of its inherent design and/or manufacturing defects. Defendants suppressed this information and continued sales and marketing of its product to the general public. Defendants knew or should have known Plaintiff had no means, other than Defendant's full, accurate, and objective disclosure, of obtaining the relevant information.

91. Through their unique knowledge and expertise regarding the affected nature of the Kugel Composix Hernia Patches, and through their statements to physicians and their patients in advertisement, promotional materials, and other communications, Defendants professed and affirmed to the Plaintiff their knowledge of the truth of the representation that the Kugel Composix Hernia Patches were safe for their intended use and were free from design and/or manufacturing defects.

92. Defendants' misrepresentations and omissions were made intentionally to induce Plaintiff to purchase Defendants' Kugel Composix Hernia Patches, in order to reap the high profit margin relating to the Kugel Composix Hernia Patches.

93. Defendant's conduct took unconscionable advantage of its dominant position of knowledge, engaging in constructive fraud in its relationship with Plaintiff. Misled by this veil of fraud, the Plaintiff reasonably relied on Defendant's representations.

**Wherefore**, Mr. IRVING respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

Case 1:07-cv-01880-MJ-DA Document 1 Filed 07/08/2007 Page 18 of 19

## COUNT IX
### Misrepresentation by Omission

94. Mr. IRVING re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

95. Defendants misrepresented the mechanical soundness and reliability of the Kugel Composix Hernia Patches to the general public through promotional and marketing campaigns. Defendants continued this misrepresentation for an extended period of time, without disclosing material information regarding the defective, hazardous, and harmful complications relating to the Kugel Composix Hernia Patches.

96. Defendants took advantage of the limited ability Plaintiff had to discover Defendants' strategic and intentional concealment of the defects in their Kugel Composix Hernia Patches.

97. Defendants concealed these design and/or manufacturing defects from the public by withholding information pertaining to the inherent design and/or manufacturing defects and high risks of failure relating to the Kugel Composix Hernia Patches, and presenting the devices as sound and reliable.

98. Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to Plaintiff, the public at large, and Plaintiff's surgeons to induce the purchase of Defendants' Kugel Composix Hernia Patch over other hernia mesh repair systems on the market.

99. Defendants knew or should have known of the high risk the Plaintiff would encounter by unwittingly agreeing to have implanted one of Defendants' defectively designed and/or manufactured Kugel Composix Hernia Patches.

**Wherefore**, Mr. IRVING requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Plaintiff, JACK IRVING
By his Attorneys,

Carmaletta Henson
HENSON & FUERST, P.A.
2317 Sunset Avenue
Rocky Mount, NC 27804
252-443-2111
252-443-9429

Jon C. Conlin
Ernest Cory
Craig P. Niedenthal
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Avenue
Birmingham, Alabama 35209
205-328-2200
205-326-7896

Dated: 7/3/07